1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PAUL TABET and JENIFER TABET, | ) ) | Case No. 12cv1596-IEG (DHB) |
| Movants, | ) ) | **ORDER DENYING MOTION TO QUASH SUBPOENA** |
| v. | ) ) | **[ECF No. 1]** |
| U.S. SECURITIES & EXCHANGE COMMISSION, | ) ) ) | |
| Respondent. | ) ) ) | |

On June 28, 2012, Movants Paul Tabet and Jenifer Tabet ("Movants")filed a Motion for Order Pursuant to Customer Challenge Provisions of the Right to Financial Privacy Act of 1978, 12 U.S.C. § 3410. (ECF No. 1.)  Movants seek an order preventing the U.S. Securities and Exchange Commission ("SEC") from obtaining access to their personal financial records.  On July 30, 2012, the SEC filed a verified Opposition to the motion.  (ECF No. 3.)  Having considered the parties' submissions and supporting exhibits, the Court **DENIES** the motion.

## BACKGROUND

On February 7, 2012, the SEC issued a formal order of investigation, *In the Matter of Certain Trading in Facebook, Inc.* NY-08741 ("Formal Order").  The SEC is investigating whether certain persons or entities have violated, or are violating, federal securities laws by making false and misleading statements to investors, or otherwise engaging in fraudulent conduct, in connection with the offer and sale of pre-initial

public offering ("pre-IPO") shares of Facebook, Inc.  The SEC proffers that through its investigation, it has obtained evidence that Movants may have been involved in the alleged violations.  Specifically, the SEC is investigating whether Movant Paul Tabet, and others, unlawfully offered and sold interests in Ventures Trust II, LLC and related "Ventures Trust" entities (collectively "Ventures Trust").  The SEC is also investigating whether Movants misused investor money for personal purposes.

According to the SEC, Ventures Trust is purportedly engaged in the business of raising funds to invest in the purchase of pre-IPO shares of Facebook and possibly other internet companies.  Paul Tabet is a managing member of Ventures Trust.  The SEC states it has obtained evidence that Paul Tabet and others raised at least $3 million dollars from investors by selling interests in Ventures Trust entities over the past few years.  The SEC states investors were told that Ventures Trust already owned, or would use investor funds to purchase, pre-IPO shares of Facebook and other companies.  The SEC is investigating whether, in fact, that occurred.  The SEC has obtained evidence that a forged letter was used to solicit investors and that Movant Paul Tabet emailed the forged letter to at least one potential investor.  The SEC alleges the evidence obtained so far indicates investor funds may have been misused for personal purposes by Movants.  There is evidence that in 2010 and 2011, Paul Tabet withdrew over $1 million dollars from Ventures Trust bank accounts and that $23,000 was transferred to Movant Jenifer Tabet's Bank of America bank account.  The SEC also alleges Ventures Trust may have misused investor money to pay personal expenses and debts of individuals associated with Ventures Trust.  Some of the debts appear to have been incurred before 2010 and possibly as long ago as 2004.

As part of its investigation, the SEC sought Movants' bank records through an administrative subpoena.  On June 14, 2012, the SEC issued two subpoenas to Bank of America, one for Paul Tabet's bank records and one for Jenifer Tabet's bank records.  On June 14, 2012, the SEC also sent Movants a certified letter informing each of them that it intended to subpoena their financial records from Bank of America.  The subpoenas request account opening records, account statements, checks, wire transfers, signature cards, and other records, for the time period from January 1, 2009 to present.

On June 28, 2012, Movants timely moved to quash the subpoenas.  *See* 12 U.S.C. § 3410(a) (requiring a motion to quash an administrative subpoena or summons to be filed within ten days of service or fourteen days of mailing.)  Movants contend the financial records sought are not relevant to a legitimate

law enforcement inquiry, that the subpoena is overbroad, oppressive, lacks particularity, and that the request amounts to a warrantless search and seizure under the Fourth Amendment.  (ECF No. 1.)  Movant Paul Tabet also argues there has not been substantial compliance with the Right to Financial Privacy Act because the SEC has issued subpoenas to one or more affiliated entities without any notice to Movants.

On July 2, 2012, the Court ordered the SEC to respond to the motion to quash.  (ECF No. 2.)  On July 30, 2012 the SEC filed its verified opposition.  (ECF No. 3.)

**LEGAL STANDARD**

Under the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. § 3401 *et seq.*, a financial institution may disclose a customer's financial records if such records are properly requested by a governmental authority via an administrative subpoena or judicial subpoena.  12 U.S.C. § 3402(2) and (4).  If a customer objects to the disclosure of their records, the customer must file a motion to quash the subpoena that includes an affidavit or sworn statement, and timely serve the government entity with the motion.  12 U.S.C. § 3410(a); *see also S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 (1984) (noting that "[a] customers's ability to challenge a subpoena [under the RFPA] is cabined by strict procedural requirements").  If the Court orders the government entity to respond to the motion to quash, the government must filed a sworn response.  § 3410(b).

In ruling on the motion, the Court relies on the parties' sworn statements and any additional proceedings the Court finds appropriate.  § 3410(b).  The Court must deny the motion to quash if either the applicant is not a customer whose financial records are being requested or "there is a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry."  §3410(c); *Rodriguez v. Fed. Sav. and Loan Ins. Corp.*, 712 F. Supp. 159, 162 (N.D. Cal. 1989).  The government entity has the ultimate burden of showing that the records sought are relevant to a legitimate law enforcement inquiry.  *In re Blunden*, 896 F.Supp. 996, 999 (C.D. Cal. 1995) (quoting *Collins v. Commodity Futures Trading Comm.*, 737 F.Supp. 1467, 1480 (N.D. Ill. 1990).  "For purposes of an administrative subpoena, the notion of relevancy is a broad one."  *Sandsend Fin. Consultants, Ltd v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989).  Subpoenaed information is relevant if it "touches a matter under investigation."  *Id.*  See *also United States v. Wilson*, 571 F.Supp. 1417, 142 (S.D. N.Y. 1983) ("the RFPA requires only that financial information be relevant to a 'legitimate

1  law enforcement inquiry,' and not relevant in a narrow, evidentiary sense."); *S.E.C. v. Nicita*, 2007 WL

2  1704585, *3 n.4 (S.D. Cal. June 13, 2007).  An administrative agency with statutory authority to engage in

3  investigative and accusatory duties may "investigate merely on suspicion that the law is being violated, or

4  even just because it wants assurance that it is not." *U.S. v. Morton Salt Co.*, 338 U.S. 632, 642-42 (1950).

5  <div align="center">**ANALYSIS**</div>

6  In ruling on the motion to quash, the Court must determine whether:  (1) Movants are the customers

7  whose financial records are being sought; (2) the law enforcement inquiry is legitimate; and (3) the records

8  sought are relevant to the law enforcement inquiry.  12 U.S.C. § 3410(c).

9  First, Movants have standing to challenge the subpoena under the RFPA.  Movants state in their

10  sworn statements that they are customers of Bank of America whose bank records are being sought.  (ECF

11  No. 1.)  The SEC does not contest their allegations.

12  Second, there is no dispute that the SEC has established it is involved in a legitimate law

13  enforcement inquiry.  The RFPA defines a law enforcement inquiry as "a lawful investigation or official

14  proceeding inquiring into a violation of, or failure to comply with, any criminal or civil statute or any

15  regulation, rule, or order issued pursuant thereto."  12 U.S.C. § 3401(8).  In this case, the inquiry is lawful

16  because the SEC is empowered by Section 20(a) of the Securities Act, 15 U.S.C. § 77y(a), and Section 21(a)

17  of the Exchange Act, 15 U.S.C. § 78u(a), to undertake investigations to determine whether violation of the

18  federal securities laws have occurred.  *See also S.E.C. v. Arthur Young & Co.*, 584 F.2d 1018, 1023 (D.C.

19  Cir. 1978) ("Congress has endowed the Commission . . . with broad power to conduct investigations 'such

20  . . . as it deems necessary to' ferret out violations of the federal securities laws and implement regulations,

21  whether consummated or incipient and in that connection to call for production of relevant materials by

22  those who seem to have them.").  Because the instant investigation relates to the "possible violation of

23  Section 17(a) of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Securities Exchange

24  Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder" in connection with the offer and sale of pre-IOP

25  shares of Facebook, Inc. (ECF No. 1.), the Court finds that the investigation falls squarely within the SEC's

26  statutory authority to investigate potential violations of the securities laws.  The Court, therefore, concludes

27  that the subpoenas issued to Bank of America are part of a legitimate law enforcement inquiry.

28  Third, the SEC has demonstrated that there is reason to believe the bank records sought by the

1   subpoenas are relevant to a legitimate law enforcement inquiry.  The burden is on the SEC to make a

2   sufficient showing of relevance.  *See In re Blunden*, 896 F.Supp. at 999.  To satisfy this burden, the SEC

3   submitted an Opposition to the Motion to Quash and a declaration signed under penalty of perjury by

4   Christopher M. Castano, an attorney with the SEC's Division of Enforcement, who is designated by the SEC

5   to help conduct the investigation pursuant to the Formal Order.  The SEC contends the subpoenaed records

6   are relevant because they are likely to provide information about the extent of Movants' involvement in the

7   alleged scheme; what other persons or entities were involved in the scheme, what ultimately happened to

8   the investors' money; the extent to which investor money may have been misused for purposes other than

9   the specific investment purpose for which the funds were purportedly raised; the identity of potential

10  victims; and the amount of any disgorgement that might potentially be owed in the event of an enforcement

11  action.  (ECF. No. 3, at 5)

12          Movants contend the subpoenas are not relevant because they seek records from January 1, 2009,

13  are overbroad, oppressive, lack particularity, and amount to a warrantless search and seizure.  These

14  arguments are unavailing.  First, the SEC has indicated it has evidence that the scheme being investigated

15  dates as far back as 2010, and there is other relevant information that dates to well before 2009.  Although

16  the Formal Order refers to the February 2012 Facebook offering, the SEC may investigate when the alleged

17  scheme started.  *See Davidov v. S.E.C.*, 415 F.Supp.2d 386, 388, n.1 (S.D.N.Y. 2006) (the time period found

18  in a Formal Order does not limit the SEC's ability to seek relevant documents outside that time period).

19  Second, even if not every record sought turns out to be relevant, there is reason to believe the records overall

20  contain information relevant to the investigation.  *See In re John Doe*, 1990 WL 119321 (S.D.N.Y. Aug.

21  10, 1990) ("Once a person's connection to apparently illicit conduct has been shown, it is relevant to know

22  whether that person's bank account contains evidence of such conduct.").  Third, the subpoenas do not lack

23  particularity.  They provide thorough definitions, identify specific types of records that are sought from

24  Movants' accounts, and they provide a specific time period (January 1, 2009 to present).  Finally, Movants'

25  argument that the subpoenas violate the Fourth Amendment lacks merit.  In *United States v. Miller*, 425 U.S.

26  435, 442-443 (1967), the Supreme Court held that bank customers have no legitimate expectation of privacy

27  in their bank records.  Therefore, when a federal agency issues a subpoena for customer records from a

28

1  bank, the customer cannot successfully challenge the subpoena on Fourth Amendment grounds.[1]  *Id.*

2  　　Movant John Tabet also argues the SEC failed to comply with the RFPA because it has issued other

3  subpoenas to "affiliated entities" without proper RFPA notification.  However, Movant wholly fails to

4  identify what other subpoenas, or other entities he is referring to.  Even assuming there are other subpoenas,

5  the argument is irrelevant because it has no connection to the two subpoenas at issue here.

6  　　On balance, the Court finds that the SEC's subpoenas seek records that are relevant to a legitimate

7  law enforcement inquiry.  *See Rodriguez*, 712 F.Supp. at 162 (bank records tracing proceeds deposited to

8  an individual's bank account are relevant to investigation)*; In re John Doe*, 1990 WL 119321 ("By showing

9  that plaintiff has a connection to activity it is charged to investigate, the SEC has shown reason for a belief

10  that the bank records it seeks here contain relevant information").

11  <center>**CONCLUSION**</center>

12  　　For the foregoing reasons, the Court **DENIES** the Motion for Order Pursuant to Customer Challenge

13  Provisions of the Right to Financial Privacy Act of 1978, 12 U.S.C. § 3410.  (ECF No. 1).

14  DATED:  August 6, 2012

15  

16  DAVID H. BARTICK
United States Magistrate Judge

17  

18  

19  

20  

21  

22  

23  

24  

25  

26  

27  

28  

---

[1] The RFPA was enacted in response to *Miller*.  It provides a limited means by which bank customers can prevent the government from obtaining their records, and is the "sole judicial remedy available to a customer to oppose disclosure of financial records."  12 U.S.C. § 3410(e).

<center>6</center>